UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KELLY SQUIRES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cause No. 1:14-cv-996-WTL-TAB |
| | ) |
| CAROLYN COLVIN, Acting Commissioner of the Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Kelly Squires requests judicial review of the final decision of the Acting Commissioner of the Social Security Administration (the "Commissioner"), denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Social Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"). The Court now rules as follows.

### I. PROCEDURAL HISTORY

Squires filed her applications for DIB and SSI on December 7, 2010, alleging disability beginning September 1, 2009, due, in large part, to back pain and pain associated with fibromyalgia. Squires' applications were initially denied on February 9, 2011, and again upon reconsideration on April 14, 2011. Thereafter, Squires requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on May 2, 2012, before ALJ James R. Norris in Indianapolis, Indiana. During the hearing, Alan Kravitz, M.D., testified as a medical expert and Robert Barber testified as a vocational expert. On May 31, 2012, the ALJ issued a decision denying Squires' applications for benefits. The Appeals Council upheld the ALJ's

decision and denied a request for review on June 22, 2013. This action for judicial review ensued.

## II.   EVIDENCE OF RECORD

The evidence of record is well documented in the ALJ's decision and need not be recited here. Facts relevant to the Plaintiff's argument are noted in the discussion section below.

## III.   APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d) (1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b).[1] At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-

---

[1] The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to DIB sections only.

2

month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

On review, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.,* and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue,* 546 F.3d 456, 462 (7th Cir. 2008). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Id.*

## IV. THE ALJ'S DECISION

At step one, the ALJ found that Squires had not engaged in substantial gainful activity since September 1, 2009, her alleged onset date. At step two, the ALJ concluded that Squires suffered from the following severe impairments: fibromyalgia, degenerative disc disease, osteoarthritis, and chondromalacia of the patella. At step three, the ALJ determined that Squires' severe impairments did not meet or medically equal a listed impairment. At step four, the ALJ concluded that Squires had the residual functional capacity ("RFC") to perform the full range of medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c). Given this RFC, the ALJ

3

determined at step five that Squires was capable of performing her past relevant work as a warehouse worker and customer service clerk. Accordingly, the ALJ concluded that Squires was not disabled as defined by the Act from September 1, 2009, through the date of his decision.

## V. **DISCUSSION**

Squires advances only one objection to the ALJ's decision.[2]

During the hearing before the ALJ, Squires' counsel attempted to cross-examine the medical expert, Dr. Kravitz, regarding several of Squires' medical records. Dr. Kravitz, however, did not have access to the medical records during the hearing and was unable to answer the specific questions posed by Squires' counsel. As a result, Squires' counsel requested a supplemental hearing during which Dr. Kravitz would have access to the record. The ALJ ultimately denied the request. Squires now argues that "[t]his was an error of law and cause for remand." Squires' Br, Dkt. No. 14 at 7. She further argues that it was "unfair . . . and eliminated her right to conduct a proper cross-examination of a witness." *Id.* at 9. The Court does not agree.

The transcript from the hearing reads as follows:

Q: [To Dr. Kravitz] . . . I'd like to direct your attention to an exhibit. It's Exhibit 3F, page 1. This is a medical verification form filled out by her physician; you have that?

A: I do.

Q: And it shows some restrictions; can you comment on those?

---

[2] Initially, Squires argued (1) that the ALJ's decision to deny a supplemental hearing was improper, and (2) that the ALJ improperly weighed the medical opinions in the record. In her reply brief, however, Squires withdrew her second argument concerning the weight accorded to the various doctors and medical experts. Squires' Reply, Dkt. No. 18 at 1 ("Upon review of the Defendant's argument, we withdraw the second argument, 'The ALJ Improperly Weighed the Medical Opinions in the Record.'"). Therefore, the Court will not address this argument.

A: I think they're mild, if at all, and I can't find objective evidence like range of motion, or an EMG, or things of that nature, that would support that.[3]

Q: Did you have the opportunity to examine any MRI results?

A: I reviewed the results, yes, sir.

Q: Can you tell me which MRI you looked at?

A: I can't tell you because I have reduced the disc in which the data has come to me to [a] multi[-]page outline. So I can't tell you which one. But if you care to refresh my memory I'll be glad to review that with [you].

Q: There's – well, number one, I asked you to take [a] look at that medical evaluation verification from. [Are you] able to look at that?

A: No, as I said I've reduced – them to a multi-page outline, and I can't – I can pull up the records at a later time, but I can't do it right now.

Q: So you can't provide any testimony on that?

A: Pardon me?

Q: So you're unable to provide any testimony on the exhibit I asked you about?

A: No, my testimony is what I said to the judge. I think that if any restriction that's found [that is] . . . severe, . . . there's a lack of objective data.

Q: Okay; I'd also like you to comment on the MRI located at 13F, page 54.

A: Do you understand that the compact disc that has all these records is not in front of me, nor am I able to view it. That's why I created this outline because it seems to make things go a bit easier for everyone.

Atty: Your honor, I'm requesting a supplemental hearing where the medical expert has access to the file of the claimant's case.

ALJ: Well, why don't you ask him, why don't – before we go to that extreme step why don't you ask him about MRI findings hypothetically? . . .

---

[3] In her reply brief, Squires argues that Dr. Kravitz's characterization of Dr. Nestor's findings as "mild," when, in fact, Dr. Nestor found Squires unable to work, renders his outline flawed and unreliable. Thus, according to Squires, the ALJ should have allowed for a supplemental hearing. Although Dr. Kravitz's characterization was not entirely correct, the Court does not agree that this simple mischaracterization required the ALJ to hold a supplemental hearing.

. . .

>Atty: Well, once again, I'm asking for a supplemental hearing. I don't believe the medical expert can testify in a manner consistent with, you know . . .
>
>ALJ: Well, I'll consider your request, but we're going to proceed.
>
>Atty: I don't see how we can do that. . . . Okay I don't have any other questions. He doesn't have the medical file.

Tr. at 50-53.

In his decision, the ALJ stated as follows recording the attorney's tactic:

> [T]he claimant's attorney utilized the interesting tactic of selecting one exhibit out of the record to . . . cross-examine . . . Dr. Kravitz [about]. When the doctor could not access the MRI because he had reduced the voluminous record to an outline, counsel requested a supplemental hearing. He never demonstrated how, if at all, the cross-examination was going to prove that the claimant was disabled or had such significant limitations that the claimant would be determined to be unable to work.

*Id.* at 38.

The same is true now. Squires argues that she was unable to "properly cross-examine," Dr. Kravitz, and, as a result, her "ability to prove Dr. Kravitz's opinion unsound was compromised." Squires' Br. at 14. Even now, however, Squires fails to argue or show the Court *how* the particular medical records would have proven the medical expert's opinion unsound. There is absolutely no discussion as to why the MRIs in question would have caused Dr. Kravitz to reach a different conclusion. During the hearing, Squires' counsel also had the opportunity to refresh Dr. Kravtiz's memory regarding the MRIs and to ask Dr. Kravtiz about hypothetical MRI findings. Such questions could have accomplished counsel's particular goals, and/or clarified the specific issues Squires had with Dr. Kravitz's opinions for the ALJ (and the Court). Squires' counsel, however, chose not to pursue those lines of questioning. As such, there is simply no reason for the Court to find that the ALJ's failure to hold a supplemental hearing was improper.

## VI.  CONCLUSION

In this case, the ALJ satisfied his obligation to articulate the reasons for his decision, and that decision is supported by substantial evidence in the record. Accordingly, the decision of the ALJ is **AFFIRMED**.

SO ORDERED: 5/15/15

*William T Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.